Patricia PARKER, Appellant,

v.

Helen CORROTHERS, Warden, Women's Unit; Robert Wells, Chairman, Board of Pardons & Paroles; A.L. Lockhart, Director of Arkansas Department of Correction, Appellees.

John Bentley YANCEY, Appellant,

v.

Marvin EVANS, Jr., Administrator, and Robert Wells, Chairman, Arkansas Board of Probation and Parole, Appellees.

Nos. 84–1284, 84–1484.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 11, 1984.

Decided Dec. 6, 1984.

Rehearing Denied Feb. 13, 1985.

Floyd R. Gibson, Senior Circuit Judge, concurred in part and dissented in part and filed opinion.

Paul D. Gordon, Little Rock, Ark., for appellant.

Randel Miller, Asst. Atty. Gen., Little Rock, Ark., for appellees.

Before HEANEY, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and ARNOLD, Circuit Judge.

HEANEY, Circuit Judge.

Patricia Parker and John Bentley Yancey appeal from district court decisions[1] dismissing their 42 U.S.C. § 1983 petitions which alleged infringement on their fourteenth amendment due process rights by the manner in which the Arkansas parole system was conducted. Yancey also appeals the dismissal of his equal protection claim. The appellants' *pro se* petitions were dismissed on the ground that Arkansas's statutes governing parole do not give rise to a protected liberty interest. Neither of the district judges inquired whether the

Board had adopted regulations governing the parole process, and accordingly did not address whether such regulations, if any, gave rise to a protected liberty interest in parole. On appeal, we received a copy of the Board's handbook entitled, "Policies Established By The Board of Pardons And Paroles" (Board Handbook).[2]

We address four issues: (1) Do the Arkansas parole statutes create a liberty interest which is protected by due process? (2) Do the Board's regulations create a liberty interest which is protected by due process? (3) If either the Arkansas statutes or Board regulations create a protected liberty interest, then what process is due? (4) Was Yancey denied equal protection under the fourteenth amendment?

## I. THE ARKANSAS PAROLE STATUTES.

Parker and Yancey allege that the district court erroneously ruled that the Arkansas parole statutes do not create a liberty interest protectible under the fourteenth amendment's due process clause. We disagree.

In *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*, 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979), the Court indicated that, although there is no constitutional right to parole, a protected liberty interest may be created by the statutes governing parole in a given jurisdiction. *Id.* at 7–11, 99 S.Ct. at 2103–2106. Specifically, the Court held that Neb.Rev. Stat. § 83–1, 114(1) (1976) created an expectancy of release entitled to some measure of constitutional protection because its "unique structure and language" provided that a committed offender who is eligible for release on parole "shall" be paroled

---

1. Parker and Yancey brought separate *pro se* petitions in the United States District Court, Eastern District of Arkansas. They both sought to represent a class of persons incarcerated by the Arkansas Department of Corrections, but their individual suits were never certified as class actions because their petitions were summarily dismissed under Fed.R.Civ.Pro. 12(b)(6). Parker's and Yancey's cases were consolidated on appeal.

2. Yancey contended below that he was denied parole in violation of the Board's rules and regulations. The state's brief on appeal responded that "whether the * * * Parole Board followed it's [sic] own rules and regulations is not a question of constitutional magnitude[.]" Brief of Appellees in *Yancey*, No. 84–1484 at 2. Accordingly, we requested and received a copy of the Board's regulations.

"unless" one or more of four reasons for deferral applied. *Id.* at 12, 99 S.Ct. at 2106.

In *Connecticut Bd. of Pardons v. Dumschat*, 452 U.S. 458, 101 S.Ct. 2460, 69 L.Ed.2d 158 (1981), the Court reversed a Court of Appeals decision which held that the Connecticut commutation statute created a protected liberty interest because there was a substantial statistical probability of release under the statute. The Supreme Court noted that the "Connecticut commutation statute, having no definitions, no criteria, and no mandated 'shalls' creates no analogous duty or constitutional entitlement" such as that created by the statute at issue in *Greenholtz. Id.* at 466, 101 S.Ct. at 2465.

In *Hewitt v. Helms*, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), and *Olim v. Wakinekona*, 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983), the Court further clarified the principles outlined in *Greenholtz* and *Dumschat*. In *Hewitt*, the Court held that Pennsylvania's prison regulations governing administrative segregation of inmates created a liberty interest entitled to some degree of constitutional protection. 459 U.S. at 469–70, 103 S.Ct. at 870–71, 74 L.Ed.2d at 687–88. The Court indicated that

> the mere fact that Pennsylvania has created a careful procedural structure to regulate the use of administrative segregation [does not] indicate[ ] the existence of a protected liberty interest * * *. [However] * * * the Commonwealth has gone beyond simple procedural guidelines. It has used language of an unmistakably mandatory character, requiring that certain procedures "shall," "will," or "must" be employed * * * and that administrative segregation will not occur absent specified substantive predicates * * *.

*Id.*
In *Olim v. Wakinekona*, 461 U.S. at 248, 103 S.Ct. at 1747, 75 L.Ed.2d at 823, the Court found that Hawaii's prison regulations on inmate transfers did not create a liberty interest because they established no substantive criteria which limit the decisionmaker's discretion.

In *Williams v. Missouri Board of Probations and Parole*, 661 F.2d 697 (8th Cir. 1981), *cert. denied*, 455 U.S. 993, 102 S.Ct. 1621, 71 L.Ed.2d 855 (1982) (*Williams II*), we held that Missouri's parole statutes created a protected liberty interest.[3] We concluded "that the Missouri law providing that *when* the statutory and regulatory guidelines are met the inmate *shall* be released on parole gives rise to the same protectible entitlement as the Nebraska scheme providing that the prisoner *shall* be paroled *unless* certain findings are made." *Id.* at 699 (emphasis in original). In *Evans v. Dillahunty*, 662 F.2d 522 (8th Cir.1981), we held that the federal parole statutes and regulations established a limited liberty interest. Although the statute did not use the specific "shall/unless" language of the Nebraska statute examined in *Greenholtz*, it provided that "if" an eligible prisoner meets certain statutory criteria, then, subject to Parole Commission guidelines, the prisoner "shall be paroled." *Id.* at 526. We noted that the Commission's guidelines made the "exercise of discretion under the federal statute more limited than that exercisable under the Nebraska scheme." *Id.*

These cases indicate that there are two standards which determine whether a statute creates a protected liberty interest in parole: 1) does the statute contain particularized substantive standards or criteria which significantly guide parole decisions; and 2) does the statute use mandatory language similar in substance or form to the Nebraska statute's language at issue in *Greenholtz*?

Parker and Yancey concede that the Arkansas parole statutes fail the mandatory language test. Ark.Stat.Ann. § 43–2808 (1977) provides that

> [t]he Parole Board *may* release any individual eligible under the provisions of Section 28 [§ 43–2807] * * * *when* in its opinion there is reasonable probability

---

**3.** These statutes have subsequently been revised.

the prisoner can be released without detriment to the community or himself. [Emphasis added.]

They argue, however, that the permissive/mandatory distinction is immaterial because the Arkansas parole statutes impose sufficient restrictions on the Board's discretion that a liberty interest in parole is created. The Circuits have split on the question of whether a parole statute must be drafted with the mandatory "shall" language to create a liberty interest in parole.[4] Our opinions in *Williams II* and *Evans* suggest that, while the presence or absence of mandatory language is not necessarily talismanic, it is an important factor in determining whether a parole statute creates a liberty interest. We need not decide, however, whether a parole statute must always use mandatory language in order to establish a liberty interest because the Arkansas statutes also do not meet the particularized standards test.

The statutes do not contain particularized substantive standards which significantly guide the Board's discretion to grant parole. We reject appellants' argument that Ark.Stat.Ann. § 43–2808 (1977) establishes a liberty interest because it provides that parole shall not be considered "as an award of clemency" or as "a reduction of sentence or pardon" but shall be ordered only "for the best interest of society" and "only when the Parole Board believes that [the eligible prisoner] is able and willing to fulfill the obligations of a law-abiding citizen."[5] These criteria leave the Board with almost unlimited discretion. This very broad discretion is set forth in Ark.Stat. Ann. § 43–2804 (1977) which provides:

> [t]he Parole Board shall have the power to determine what persons shall be placed on parole and to fix the time and conditions of such parole. * * * All policies, rules and regulations regarding parole shall be formulated by the Parole Board.

Nor do we agree with the appellants that a liberty interest is established because the Arkansas parole statutes require certain procedures—such as that "the Parole Board shall have the prisoner appear before it and shall interview him." Ark.Stat. Ann. § 43–2808 (1977). As *Hewitt* makes clear, a state may establish mandatory procedures to channel a decisionmaker's discretion without thereby creating a liberty interest. 459 U.S. at 469–70, 103 S.Ct. at 870–71, 74 L.Ed.2d at 687–88. *See also Lyon v. Farrier*, 727 F.2d 766, 768 (8th Cir.1984) (per curiam); *Johnson v. Stark*, 717 F.2d 1550 (8th Cir.1983) (per curiam). In sum, the Arkansas parole statutes do not create a liberty interest because they provide that the parole board "may" instead of "shall" grant parole and because the substantive limitations on the Board's discretion are minimal. We now turn to whether the Board's *regulations* establish a protected liberty interest in parole release.

## II. THE BOARD'S REGULATIONS.

Ark.Stat.Ann. § 43–2804 (1977), which describes the "Duties of the Parole Board," provides that "[a]ll policies, rules and regulations regarding parole shall be formulat-

---

**4.** *Compare Slocum v. Georgia State Board of Pardons & Paroles*, 678 F.2d 940, 941 n. 3 (11th Cir.) (*Greenholtz* makes "shall/unless" formulation decisive), *cert. denied*, 459 U.S. 1043, 103 S.Ct. 462, 74 L.Ed.2d 612 (1982) *and Boothe v. Hammock*, 605 F.2d 661, 663–64 (2d Cir.1979) (same) *with Winsett v. McGinnes*, 617 F.2d 996, 1007 (3d Cir.1980) (liberty interest arises when discretionary decisions must be exercised consistently with a specific statutory criterion), *cert. denied sub nom. Anderson v. Winsett*, 449 U.S. 1093, 1095, 101 S.Ct. 891, 892, 66 L.Ed.2d 822 (1981) (White, J., dissenting from denial of certiorari) (noting Circuit split and suggesting that "[w]e did not expressly state in *Greenholtz* that the 'shall ... unless' language was the critical

factor underlying our determination that the statute created a liberty interest"); *and Bowles v. Tennant*, 613 F.2d 776, 778 (9th Cir.1980) (describing mandatory language as an "important" factor in creation of liberty interest).

**5.** We also reject the appellants' argument that a liberty interest is created by the several Arkansas statutes on parole eligibility. *See* Ark.Stat. Ann. §§ 43–207, 2807:1, 2828, 2829, 2830.1, 2830.2 & 2830.4 (1977 & Supp.1983). These statutes do not limit the Board's discretion to determine which eligible inmates shall be paroled.

ed by the Parole Board." Pursuant to this authority, the Board has prepared what it describes as "a comprehensive handbook for parole procedure in the State of Arkansas." Board Regulation § 1.02. We are specifically concerned with whether a protected liberty interest is created by Board Regulation § 3.09. This regulation provides:

> *Parole Board Decisions.*—(1) Whenever the [Parole Board] considers the first release of [an inmate] eligible for release on parole, it [is] the policy of the Board to order his release unless the Board is of the opinion that release should be deferred because:
>
> (a) there is substantial risk that he will not conform to the conditions of parole; or
>
> (b) his continued correctional treatment, medical care or vocational or other training in the institution will substantially enhance his capacity to lead a law-abiding life when released at a later date; or . . . .
>
> (c) he has served a short time; or
>
> (d) the nature and seriousness of his offense warrants a deferral; or
>
> (e) his prior criminal history warrants a deferral; or
>
> (f) his adjustment to the institution has been poor; or
>
> (g) he has received disciplinary reports; or
>
> (h) a detainer has been filed against him (*see* § 3.15); or
>
> (i) other considerations require that parole should be deferred.
>
> (2) In making its determination regarding [an inmate's] release on parole, it [is] the policy of the [Parole Board] to take into account the following factors.
>
> (a) institutional adjustment in general, including the nature of any disciplinaries;
>
> (b) the record of previous criminal offenses, the frequency of such offenses and the nature thereof[."] [Citations omitted.]

Parker and Yancey argue that this regulation establishes a protected liberty interest in parole. Before we can reach this issue, we must address the state's preliminary arguments that: 1) we should not consider whether the regulation establishes a protected liberty interest because this question was not considered by the district court; and 2) the regulation does not establish a protected liberty interest because it is merely an internal policy memorandum which was not promulgated or published pursuant to the Arkansas Administrative Procedure Act (A.P.A.), Ark.Stat.Ann. §§ 5–701 through 715.3 (1976 & Supp.1983), and was not intended as a "specific rule of law" which would control the Board's discretion.

First, we do not believe that the district court's failure to examine the regulation precludes our consideration of it. Although we are reluctant to decide on appeal an issue not reached below, *Singleton v. Wulff*, 428 U.S. 106, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976), both parties at oral argument, and the government on brief, addressed the question of whether the regulation establishes a protected liberty interest in parole. This is primarily a legal question which we may address on appeal. *See Lucas v. Hodges*, 730 F.2d 1493, 1501 (D.C.Cir.1984).

Second, although the record does not indicate when the regulation was adopted, it does indicate that the Board, at some point in time, did adopt it with the intent of following it and that the Board did follow it up until the time this appeal was brought. The regulation was contained in a section of Board regulations preceded by the statement "The following memorandums shall constitute the policy of the Board of Pardons and Paroles for the State of Arkansas, and shall remain in full effect and force until such time as superseding policy is adopted." Superseding policy was not adopted until this appeal was pending.[6] Accordingly, we find that

---

6. While this appeal was pending, the Board, apparently without following the Arkansas A.P.A., revised Regulation § 3.09. This new regulation is not at issue here.

the Board did intend to follow the regulation.

The state nonetheless argues that the regulation cannot create a liberty interest because it was not promulgated or published as required by the Arkansas A.P.A. and thus, under Ark.Stat.Ann. §§ 5–702(b) and 5–703(e) (1976), is "invalid." The record, however, does not indicate whether the A.P.A. was followed, or whether the Board was subject to the A.P.A. at the time it issued the regulation.[7] It is also unclear whether the Board may claim that the regulation is invalid under Ark.Stat.Ann. § 5–702(b) (1976) which provides that "[t]his provision [that no agency rule shall be valid unless filed and published] shall not apply in favor of any person or party [including agencies] with actual knowledge of an agency rule, order or decision." *Cf. Bushong v. State*, 267 Ark. 113, 589 S.W.2d 559 (1979), *cert. denied*, 446 U.S. 938, 100 S.Ct. 2157, 64 L.Ed.2d 791 (1980).

■ In any event, our review of the case law indicates that while it may be necessary that a regulation be promulgated or published under A.P.A. standards in order to become a "rule of law," a regulation or policy statement need not necessarily be a "rule of law" in order to create a liberty interest. In *Lucas v. Hodges*, 730 F.2d 1493 (D.C.Cir.1984), for example, the Court held that official statements of prison policy contained in internal directives of officials at the District of Columbia Detention Facility and the Lorton Reformatory could give rise to a liberty interest, even though the statements were not promulgated un-

der A.P.A. standards or published in the District of Columbia Register or elsewhere. *Id.* at 1501–04. The Court remanded for a determination of whether the policy memorandums were authoritative statements of the criteria by which prisoner classification decisions are made. The Sixth Circuit, in *Walker v. Hughes*, 558 F.2d 1247, 1254–56 (6th Cir.1977), found a liberty interest in policy statements issued by the Federal Bureau of Prisons and the warden of a federal institution even though neither had been promulgated under A.P.A. standards or published in the Federal Register or in any other body of federal regulations. *See also Bills v. Henderson*, 631 F.2d 1287, 1291 (6th Cir.1980) (holding that a liberty interest was established by a prison rule contained in an "Adult Service Policies and Procedure Manual of the Department of Corrections (Guidelines)"). The Tenth Circuit, in *Gurule v. Wilson*, 635 F.2d 782, 785 (10th Cir.1980), found a protected liberty interest in an "official statement of policy" issued by the Administrator of one Colorado penitentiary. Similarly, the Seventh Circuit has held that a liberty interest may be created by "intra- and inter-institutional directives containing guidelines for allowing and denying compensatory good time." *Arsberry v. Sielaff*, 586 F.2d 37, 47 (7th Cir.1978). *See also Harris v. McDonald*, 737 F.2d 662, 664 (7th Cir.1984); *Durso v. Rowe*, 579 F.2d 1365, 1369 (7th Cir.1978), *cert. denied*, 439 U.S. 1121, 99 S.Ct. 1033, 59 L.Ed.2d 82 (1979). *Dicta* from cases in several other Circuits support these holdings.[8]

---

7. Ark.Stat.Ann. § 5–703(e) (1976) provides, "No rule *hereafter adopted* shall be valid unless adopted and filed in substantial compliance with this Section 3." (Emphasis added.) The Arkansas A.P.A. was enacted in 1967. The record is unclear whether Regulation § 3.09 was adopted before or after this date. Nor are we sure whether, as a matter of state law, the Board of Pardons and Paroles is an "agency" which must comply with the A.P.A. under Ark. Stat.Ann. § 5–701(a) (1976).

8. *Dudley v. Stewart*, 724 F.2d 1493, 1498 (11th Cir.1984) (practices of county officials may give rise to a liberty interest); *Winsett v. McGinnes*, 617 F.2d 996, 1006–07 (3d Cir.1980) (en banc),

*cert. denied, sub nom. Anderson v. Winsett*, 449 U.S. 1093, 101 S.Ct. 891, 66 L.Ed.2d 822 (1981) ("the Due Process Clause may be triggered * * * not only by statutorily created rights, but also by official policies and practices."); *Dumschat v. Connecticut Bd. of Pardons*, 618 F.2d 216, 219 (2d Cir.1980) (Liberty interest "may * * * be based on regulations, policies, understandings, contractual arrangements or institutional practices."), *rev'd on other grounds*, 452 U.S. 458, 466, 101 S.Ct. 2460, 2465, 69 L.Ed.2d 158 (1981). *But cf. Berard v. State of Vt. Parole Board*, 730 F.2d 71, 73 (2d Cir.1984) (suggesting that Vermont Parole Board's written policy statement does not establish a liberty interest because it is not "grounded in the state's statutory scheme").

Additionally, although neither the Supreme Court nor this Court has determined precisely what kind of administrative pronouncement is necessary to create a protected liberty interest, *dicta* from Supreme Court cases [9] and Eighth Circuit cases [10] suggest that the policy statements or internal regulations of an agency or institution may create liberty interests, even if they have not been promulgated or published under A.P.A. standards as formal "rules of law." In *Olim*, the Court held that a liberty interest arises when "particularized standards or criteria guide the State's decisionmakers," 461 U.S. at 249, 103 S.Ct. at 1747, 75 L.Ed.2d at 823, quoting *Dumschat*, 452 U.S. at 467, 101 S.Ct. at 2465 (Brennan, J., concurring).

■ We agree with every Circuit that has squarely considered this issue that these particularized standards or criteria which give rise to liberty interests may be found not only in a state's statutes or administrative code but also within official policy pronouncements which are intended

*See also Hayes v. Thompson,* 726 F.2d 1015, 1017 (4th Cir.1984) (overruling *Gorham v. Hutto,* 667 F.2d 1146, 1148 (4th Cir.1981), which held, over a dissent by Judge Murnaghan, *id.* at 1148–51, that "prison policy guidelines are not a sufficient basis for affording state prisoners a liberty interest." The Court remanded for a determination of whether Virginia's statewide prison regulations created a liberty interest.).

**9.** *Connecticut Bd. of Pardons v. Dumschat,* 452 U.S. 458, 466, 101 S.Ct. 2460, 2465, 69 L.Ed.2d 158 (1981) ("The ground for a constitutional claim, if any, must be found in statutes *or other rules* defining the obligations of the authority charged with exercising clemency[;]" here "there are no explicit standards by way of statute, regulation *or otherwise.*" [Emphasis added.] ); *id.* at 467, 101 S.Ct. at 2465 (White, J., concurring) (emphasizing that state law is not "the only source of a prisoner's liberty worthy of federal constitutional protection"); *id.* at 467, 101 S.Ct. at 2465 (Brennan, J., concurring) ("respondents must show—by reference to statute, regulation, administrative practice, contractual arrangements or other mutual understanding— that particularized standards or criteria guide the State's decisionmakers"); *Vitek v. Jones,* 445 U.S. 480, 489, 100 S.Ct. 1254, 1261, 63 L.Ed.2d 552 (1980) (approving district court finding that liberty interest was created by "state law and official Penal Complex practice"). *See also Wright v. Enomoto,* 462 F.Supp. 397 (N.D.Cal. 1976), *aff'd,* 434 U.S. 1052, 98 S.Ct. 1223, 55 L.Ed.2d 756 (1978) (approving district court's finding of a liberty interest in state rules, practices and procedures); *Meachum v. Fano,* 427 U.S. 215, 229, 96 S.Ct. 2532, 2540, 49 L.Ed.2d 451 (1976) (state may create liberty interest "by statute, by rule or regulation"); *Hewitt,* 459 U.S. at 486 n. 12, 103 S.Ct. at 879 n. 12, 74 L.Ed.2d at 698 n. 12 (Stevens, J., dissenting, joined by Brennan, J., and Marshall, J.) (disagreeing with Court's assumption that states create a prisoner's interest in liberty, but noting that to the extent a state does create a liberty interest, "[i]t does not matter whether the State uses a particular form of words in its laws or regulations, or indeed whether it has adopted written rules at

all."); *but cf. Jago v. Van Curen,* 454 U.S. 14, 19–20, 102 S.Ct. 31, 35–36, 70 L.Ed.2d 13 (1981) (Liberty interest in parole cannot be created by "mutually explicit understanding" between the parole granting authority and an individual prisoner that he would be paroled. The Court indicated that the *property* interest cases are not necessarily applicable to the *liberty* interest cases and, in *dicta,* suggested that a liberty interest, unlike a property interest, may not be created by the "unwritten" "common law" of a penal institution or parole board); *Hewitt v. Helms,* 459 U.S. at 469, 103 S.Ct. at 870, 74 L.Ed.2d at 687 (Procedural rules governing the daily operations of a prison do not create liberty interests.)

**10.** In *Lyon v. Farrier,* 727 F.2d 766, 769 (8th Cir.1984) (per curiam), we held that an Iowa prison's "Inmate Policy and Procedure Statements" did not create a liberty interest because they merely established a procedural framework for administering the prison and placed no substantive limitations on the decisionmaker's discretion. We did not hold, however, that the prison's internal policy guidelines were incapable of creating liberty interests because they were not statutes or duly enacted regulations of statewide application. Similarly, in *Jones v. Mabry,* 723 F.2d 590, 593 (8th Cir.1983), *cert. denied,* — U.S. —, 104 S.Ct. 2683, 81 L.Ed.2d 878 (1984), we held that an Arkansas Prison's "Inmate Handbook" did not create a liberty interest because it did not provide that an inmate would be placed in a "High Security Risk" (HSR) classification only upon the occurrence of certain acts or events. For similar reasons, we also held that the prison warden's memorandum creating the HSR classification did not establish a liberty interest. We did not hold, however, that either the "Inmate Handbook" or the Warden's memorandum were incapable of creating liberty interests because they did not constitute lawfully enacted statutes or regulations. In *Williams v. Walls,* 744 F.2d 1345 (8th Cir.1984), we suggested in *dicta* that a liberty interest may arise from a "statute, regulation or practice which places substantive limitations on [the exercise of] discretion." *Id.,* at 1346.

to guide the exercise of discretion. Because we find that the regulation is an official policy pronouncement which the Board intended would guide its discretion, we find that it is irrelevant to the liberty interest question whether or not the Board complied with the Arkansas A.P.A. We now turn to the question whether the regulation establishes a liberty interest.

In Section I, we held that the Arkansas parole statutes do not create a protected liberty interest. We concluded that the controlling case law sets forth two standards which determine whether a parole statute creates a protected liberty interest: 1) does the statute contain particularized substantive standards or criteria which significantly guide the exercise of discretion; and 2) does the statute use mandatory language similar in substance or form to that used in the Nebraska statute which the Supreme Court in *Greenholtz* held established a protected liberty interest? We believe that these are also the relevant factors for determining whether a parole *regulation* establishes a protected liberty interest. *Evans*, 662 F.2d at 526. *See also Olim*, 75 L.Ed.2d at 813; *Lucas v. Hodges*, 730 F.2d at 1503.

■ Because Regulation § 3.09 provides that the Board will base its decision on certain substantive criteria, it satisfies both standards. First, the regulation sets forth particularized substantive criteria which significantly guide the Board's discretionary decision to grant or deny parole release. *Evans*, 662 F.2d at 526. *See also Olim*, 461 U.S. at 238, 103 S.Ct. at 1741, 75 L.Ed.2d at 813. Second, the language of

the regulation is similar to the language of Neb.Rev.Stat. § 83–1, 114(1) (1976),[11] which the Supreme Court in *Greenholtz*, 442 U.S. at 11–12, 99 S.Ct. at 2105–2106, held was sufficient to create a liberty interest entitled to some measure of constitutional protection. There is little or no significant difference between Neb.Rev.Stat. § 83–1, 114(1) (1976) (which provides that the Board of Parole "shall" order parole release "unless" it determines that one or more of four substantive reasons for deferral applies) and the regulation (which provides that when the Board "considers the first release" of an inmate, it is the "policy of the Board to order * * * release" unless one or more of nine substantive reasons for deferral applies). Accordingly, the regulation establishes a protected liberty interest. We now turn to whether it applies to Parker and Yancey.

■ Parker and Yancey must be considered for parole under the Board guidelines in use at the time they committed the first crime for which they are now imprisoned. U.S. Const. art. I, § 9; *Weaver v. Graham*, 450 U.S. 24, 28–9, 101 S.Ct. 960, 963–4, 67 L.Ed.2d 17 (1981); Ark. Const. art. 2, § 17; *Bosnick v. Lockhart*, 283 Ark. 206, 672 S.W.2d 52 (1984); Ark.Stat.Ann. § 43–2830.3 (Supp.1983). The record does not indicate when the regulation was first adopted, or when Parker and Yancey committed the first crimes for which they are now imprisoned. Accordingly, the district court on remand must determine whether the regulation had been adopted at the time Parker and Yancey committed the first crimes for which they are now imprisoned.[12]

**11.** Neb.Rev.Stat. § 83–1, 114(1) (1976) provides in relevant part:

> Whenever the Board of Parole considers the release of a committed offender who is eligible for release on parole, it shall order his release unless it is of the opinion that his release should be deferred because:
> (a) There is a substantial risk that he will not conform to the conditions of parole;
> (b) His release would deprecate the seriousness of his crime or promote disrespect for law;
> (c) His release would have a substantially adverse effect on institutional discipline; or

> (d) His continued correctional treatment, medical care, or vocational or other training in the facility will substantially enhance his capacity to lead a law-abiding life when released at a later date.

**12.** We previously found that Regulation § 3.09 was in effect up to the time the Board revised the regulation while this appeal was pending. Our examination of Regulation § 3.09 also suggests that it has been in effect for many years. The regulation's footnote 34 cites "Ark.Stat.Ann. § 43–2819 (Repl.1964)." "Repl.1964" is then crossed out and "Supp.1971" is written in. The current version of Ark.Stat.Ann. § 43–2819 is in

The regulation also appears to apply only to those inmates who are being considered for their first parole release. It provides that it is applicable when the Board "considers the first release of an inmate." The district court, on remand, must determine whether Parker and Yancey fall within this provision.

In sum, the district court on remand must determine if the regulation applies to Parker and Yancey. If so, they are entitled to its protection. Assuming that the regulation was in effect when Parker and Yancey committed the first crimes for which they are now imprisoned, and that they are eligible for their first parole release as provided in the regulation, we now must decide whether there were sufficient procedural safeguards to protect the liberty interest which the regulation accords them.

## III. PROCEDURAL SAFEGUARDS.

Yancey's complaint below alleged that he was generally denied due process because the Board did not follow its own rules and regulations when it considered him for parole. Parker alleged five procedural inadequacies in the manner in which her parole hearing was handled. Because the district courts summarily dismissed their claims under Fed.R.Civ.P. 12(b)(6), we do not have the factual record necessary to specifically determine in what respects Parker and Yancey were denied due process. As guidance to the district court on remand, however, we have examined Parker's five specific complaints and determined which claims we believe have some merit and should be considered more fully on remand.

■ First, Parker claimed below that the "serious nature of the offense" is not a valid reason for denying parole. Clearly, the Board may determine that the serious nature of the inmate's offense requires that a longer term be served before parole release. *Cf. Greenholtz,* 442 U.S. at 15, 99 S.Ct. at 2107; *Sweazea v. Missouri Board of Probation & Parole,* 742 F.2d 482, 483 (8th Cir.1984). We understand Parker's

complaint to be not that the Board cannot consider the seriousness of her offense as a factor in denying her parole but rather that a boilerplate explanation that her parole release was denied because of the "serious nature of the offense" is too broad and general to comply with due process.

■ In *U.S. ex rel. Scott v. Ill. Parole and Pardon Bd.,* 669 F.2d 1185, 1901 (7th Cir.), *cert. denied* 459 U.S. 1048, 103 S.Ct. 468, 74 L.Ed.2d 617 (1982), the Court indicated that it is inadequate to deny parole with a boilerplate explanation that parole would deprecate the severity of the crime for which the inmate is imprisoned. The Court noted that if the decisionmaker paroles some inmates convicted of murder, but denies parole to other inmates on the ground that they were convicted of murder, it must explain why the particulars of the murder and the sentence in the denied inmate's case justify deferral of parole release. The Board could also indicate that the severity of the offense, in combination with other factors, calls for deferral of parole release. In sum, the Board may deny Parker parole release because of the severity of her criminal act and sentence, but it must explain in more than boilerplate generalities why the severity of her particular offense and sentence requires deferral of parole.

■ Parker also claims that the parole board must provide inmates who are denied parole a full and fair explanation, in writing, of the evidence relied upon as reasons for denial of parole. We disagree because this claim was specifically rejected in *Greenholtz,* 442 U.S. at 15–16, 99 S.Ct. at 2107–2108.

■ Parker next claims that the Board should make available to her a list of criteria governing parole decisions. The state argued below that it already provides inmates with this information. The Board's regulations also provide that an institutional parole officer will explain parole procedures and policies to inmates. Board Handbook at 38. We believe that due pro-

the 1977 replacement volume, and the current    supplement is dated 1983.

cess requires that Parker and Yancey be informed of Board procedures and parole criteria. Because it is unclear to what extent Parker and Yancey have been inadequately informed about these procedures and criteria, we leave to the district court, on remand, the task of determining what procedures and criteria Parker and Yancey should be informed of and to what extent they have been denied this information.

█ Fourth, Parker claims that she is entitled to present documentary evidence in support of her application for parole. In *Greenholtz*, 442 U.S. at 15, 99 S.Ct. at 2107, the Court noted that the Nebraska scheme allowed inmates to present letters and statements on their behalf. In *Evans*, 662 F.2d at 526, we noted that an inmate should be provided an opportunity to respond to statements in his file which he believes are false. While we accept the Court's conclusion in *Greenholtz*, 442 U.S. at 14–15, 99 S.Ct. at 2107–2108 that a full evidentiary hearing is not required, Parker and Yancey should be allowed to present reasonable documentary evidence, such as letters and statements on their behalf. Because the record is unclear to what extent Parker and Yancey have not been allowed to present reasonable documentary evidence on their behalf, we leave to the district court on remand the task of determining what documentary evidence Parker and Yancey should be but have not been allowed to introduce at their parole hearings.

█ Finally, Parker claimed that she is entitled to review her parole records and to rebut evidence contained therein which she believes is inaccurate. Certain aspects of an inmate's parole record are already required to be kept in a public file under Ark.Stat.Ann. § 43–2819 (1977). In *Williams v. Missouri Bd. of Probation and Parole*, 585 F.2d 922, 925–26 (8th Cir.1978), *vacated and remanded*, 442 U.S. 926, 99 S.Ct. 2853, 61 L.Ed.2d 293 (1979) *(Williams I)*, *Williams II*, 661 F.2d at 699–700, and *Evans*, 662 F.2d at 526, we set forth the standards governing inmate access to files. These standards balance the need to remove inaccurate information from files

with the state's need to preserve the confidentiality of sources of information and to preserve security and discipline in its institutions. On remand, the court must decide, in light of these standards, what information Parker and Yancey should be allowed access to, and the extent to which they can rebut information which they believe is false.

In summary, we remand this case to the district court to determine if Regulation § 3.09 was in effect at the time Parker and Yancey committed the crimes for which they are now serving time and if the regulation applies to them. If so, the court must determine what procedural safeguards are necessary to accord them due process when they are considered for parole release. The court may take additional evidence, if necessary, and should consider the relevant Arkansas statutes, the Board's applicable rules and regulations, and the principles set forth in this decision. The district court should appoint counsel to represent plaintiffs during the proceedings on remand.

## IV.  YANCEY'S EQUAL PROTECTION CLAIM.

Yancey argues that the district court erred in holding that he was not denied due process or equal protection by the manner in which his parole hearing was conducted. We have held that if Yancey is covered by Board Regulation § 3.09, then he is entitled to due process protection when he is considered for release on parole. Because we believe this holding fully addresses Yancey's complaint, we need not address his equal protection claim.

In conclusion, we reverse and remand for further proceedings consistent with this opinion.

FLOYD R. GIBSON, Senior Circuit Judge, concurring in part and dissenting in part.

I concur with the majority's holding in Part I that the Arkansas parole statutes do not create a protectable liberty interest.

However, I dissent from the majority's holding in Part II that Arkansas Parole Board Regulation § 3.09 does create such an interest. I do not agree with the majority's conclusion that "little or no significant difference" exists between the Nebraska statute held by the Supreme Court in *Greenholtz* to establish a protected liberty interest, and the regulation here. The Nebraska statute mandated release on parole of any prisoner unless any one of "four specifically designated reasons" was found. 442 U.S. at 12, 99 S.Ct. at 2106. The regulation at issue here, however, after listing eight specific situations in which the Board could be "of the opinion that release should be deferred," states that the Board could reach the same conclusion for "other considerations." Board Regulation § 3.09(1)(i). Although § 3.09 is couched in language and form that appears to mandate the granting of parole unless specific circumstances exist, limiting the Board's discretion to a minimum, subsection (i) shows that the apparent limitation on discretion is illusory. By giving the Board the authority to refuse parole to an inmate because of "other considerations," the regulation grants the Board the freedom to refuse parole for any reason it deems appropriate. The regulation thus places too broad a discretion in the parole board to conclude that a liberty interest exists. With the addition of subsection (i), subsections (a) through (h) lose their predictive value. Even if a prisoner were not subject to the conditions warranting a denial of parole in subsections (a) through (h), he could have no expectation of release because the Board may be "of the opinion" that subsection (i) should come into play.

The Supreme Court stated in *Hewitt v. Helms*, 459 U.S. 460, 472, 103 S.Ct. 864, 871, 74 L.Ed.2d 675 (1983) that "the repeated use of explicitly mandatory language in connection with *requiring specific substantive predicates* demands a conclusion that the State has created a protected liberty interest" (emphasis added). The inclusion of the amorphous, general subsection (i) in § 3.09 (1) demonstrates that the Arkansas Parole Board was not required to find that a specific substantive predicate

existed before denying parole. Indeed, the situation comes close to one in which "the decisionmaker can deny the requested relief for any constitutionally permissible reason or no reason at all." *Connecticut Board of Pardons v. Dumschat*, 452 U.S. 458, 467, 101 S.Ct. 2460, 2465, 69 L.Ed.2d 158 (1981) (J. Brennan, concurring). Absent a finding that the regulation contained explicit mandatory language and required the Parole Board to find that specific substantive predicates existed before making its parole decision, I would not interfere with the Parole Board's decision-making process. The Parole Board has a statutory duty to pass upon the parole application. It is in a much better position to process these parole applications than are the courts. The parole function is an administrative function that is within the jurisdiction and proper sphere of activity of the Executive Branch. I don't think the courts should interfere in the parole process absent a clear constitutional violation, which I do not perceive in this case.

At most I would remand this case to the district court for determination of whether the Board's *Regulations* were validly adopted. If the district court holds that the *Regulations* were validly adopted, then that court first should determine whether the regulation in question creates a liberty interest.