803 F.Supp. 1576 (1992)
Milton V. GRIFFIN-EL, Plaintiff,
v.
Paul K. DELO, et al., Defendants.
No. 90-1104-C(6).
United States District Court, E.D. Missouri.
August 12, 1992.
*1577 Nicholas B. Carter, St. Louis, Mo., for plaintiff.
Brian McGovern, Chesterfield, Mo., for defendants Paul K. Delo and Betty Weber.

MEMORANDUM-OPINION
BAHN, United States Magistrate Judge.
This matter was heard by the Court, sitting without a jury, on February 18, 1992. In light of the pleadings, the testimony at trial, and the documentary evidence, the undersigned makes the following findings of fact and conclusions of law as required by Rule 52(a) of the Federal Rules of Civil Procedure.

FINDINGS OF FACT
1. Plaintiff Milton Griffin-El brought this action pursuant to 42 U.S.C. § 1983.
2. Plaintiff is an inmate at the Potosi Correctional Center (PCC) in Mineral Point, Missouri. At the time of the incidents complained of, plaintiff was confined in the Capital Punishment Unit (CPU).
3. Defendant Paul K. Delo is the superintendent of PCC. Defendant Betty Weber is the staff psychologist at PCC.
4. Plaintiff filed this action against defendants on June 7, 1990, alleging that defendants denied him due process at two prison disciplinary hearings. Two allegations were at issue during trial of this matter. First, plaintiff alleged that defendant Delo violated a prison regulation when he unilaterally reduced plaintiff's classification level. Second, plaintiff alleged that defendant Weber violated a prison regulation when she participated as a voting member of the classification committee which reviewed plaintiff on January 17, 1990 and March 5, 1990.
5. On November 14, 1989, plaintiff was one of 18 inmates who said they would not lock down until they got to talk to certain officials. Plaintiff was charged with violation of the Rule 9 prohibition on organized disobedience.
6. Violation of Rule 9 is ranked as a "major" violations in the Inmate Rule Book and in the compilation of PCC policies and procedures entitled Division of Adult Institutions, Potosi Correctional Center, "Standard Operating Procedures" ("Standard Operating Procedures"). This manual was written by defendant Delo based on his understanding of the applicable Missouri statutes and departmental regulations.
7. On November 15, 1989, plaintiff was one of 43 inmates who refused to return their empty food trays. Plaintiff was charged with violation of Rule 9 and the Rule 20 prohibition on disobeying an order.
8. Plaintiff was interviewed by a reporting officer after the issuance of each conduct violation. Both times he was informed that he would be appearing before a classification team regarding the violations.
9. According to "Standard Operating Procedure" 21-1.5(III)(A)(2), a classification team receives recommendations from inmate caseworkers and makes referrals and recommendations to the classification committee and the adjustment board.
10. Plaintiff appeared before the Classification Team regarding the November 14 violation on November 16, 1989. On November 20, 1989, he appeared before the same Classification Team regarding the November 15 violation. The Classification Team recorded no evidence and made no written findings on either date. Both times it merely made the following record: "Informed rights still in effect. Refer to ADJ. BRD."
11. The Adjustment Board has the responsibility of holding hearings on major violations. See Procedure No. IS19-1.4(III)(A) of the Missouri Department of Corrections and Human Resources Institutional Services Policy and Procedural Manual (IS Manual). At PCC, major conduct violations are automatically referred to the Adjustment Board for review.
12. The Adjustment Board met concerning these violations on November 21, 1989. The Board took up the November 14 violation first with plaintiff present. Plaintiff was informed of his Miranda rights. Plaintiff told the Board he could not defend *1578 himself without an attorney and refused to remain at the hearing.
13. In his absence, the Board heard evidence from one corrections officer that plaintiff had been engaged in organized disobedience on November 14 and again on November 15. The Board found plaintiff guilty of engagement in organized disobedience on both days.
14. The Board filled out a Disciplinary Action Report for each violation. Both reports recommended that plaintiff be given ten days disciplinary detention. Both also referred the matter to the Classification Committee for possible reduction of plaintiff's custody level.
15. According to "Standard Operating Procedure" 21-1.5(II)(E), the Classification Committee "[c]onducts reviews of all aspects of classification for inmates assigned to CPU."
16. Disciplinary detention is a disciplinary sanction, not a custody level. A prisoner on disciplinary detention is "placed in a segregation cell for a maximum of 10 days per conduct violation." Procedure No. IS19.1.1 (Attachment A).
17. On November 22, 1989, the assistant superintendent reviewed the Adjustment Board's recommendations. The form gave him the option of passing on the recommendation as submitted, or of recommending a modification to the Adjustment Board's recommendation.
18. The assistant superintendent modified the recommendation on the November 14 violation. He wrote, "Overruled: Assign Medium Custody/CPU." He also wrote, "Alt Judgment: Rejection of constituted authority & discipline."
19. The assistant superintendent also modified the recommendation on the November 15 violation. He recommended that the disciplinary detention periods run concurrently for both violations.
20. Under Procedure No. IS19.1.4(E)(2), the sanctions recommended by the Adjustment Board as modified by the assistant superintendent go into effect immediately, "however, the institution head/designee has the option, upon review, to approve and order the recommended sanctions, modify or deny and order a new hearing. Anytime the sanctions are modified the institution head/designee will provide justification for doing so on the Disciplinary Action Report form."
21. Later on November 22, 1989, defendant Delo, was given the Board's recommendations as modified by the assistant superintendent. The forms gave him the option of approving the recommendation as submitted, modifying it again, or taking other action. On both forms defendant Delo checked the box marked "other."
22. On the form related to the November 14 violation, defendant Delo reduced plaintiff's Rule 9 violation to a Rule 20 violation for disobeying an order. He issued plaintiff a written warning.
23. On the form related to the November 15 violation, defendant Delo wrote, "Overruled. Reduce to medium custody/CPU."
24. Defendant Delo testified that the aspect of the recommendation he overruled was the recommendation that the disciplinary detention periods run concurrently for both violations. Since he had reduced the penalty for the November 14 violation to a written warning, plaintiff no longer faced two disciplinary periods.
25. Defendant Delo provided no written justification for overruling the modified recommendation.
26. Defendant Delo testified that in effect he approved the assistant superintendent's recommendation that plaintiff be reduced to medium custody. He testified that he deemed it appropriate to reduce plaintiff's custody level because of his participation in organized disobedience.
27. Neither violation was referred back to the Classification Team as recommended.
28. According to "Standard Operating Procedure" 21-1.5(III)(A)(2), the Classification Committee's function is to review the inmates and to hear referrals from the classification team, conduct grievance hearings, and perform medical or psychological reviews as needed.
*1579 29. According to "Standard Operating Procedure" 21-1.5(III)(A)(3), the Classification Committee is to be composed of the assistant superintendent and two other prison officials. The assistant superintendent "routinely" functions as the chairperson for the committee.
30. Procedure No. IS19.1.1 lists 37 rules for inmate conduct and provides a corresponding list of sanctions. A reduction in classification level is not among the sanctions listed for Rule 9 violations.
31. Under Procedure No. IS19.1.1(III)(E), sanctions must "be issued in accordance with the Range of Sanctions Table.... Institutions may utilize all or part of the sanctions listed, but may not create additional sanctions."
32. Under Procedure No. IS19.1.1(III)(E)(4), "[w]hen a violation is considered serious in nature and referred as a major conduct violation, any sanction which is determined appropriate and approved by the institution head/designee, may be utilized."
33. According to "Standard Operating Procedure" 21-1.5(III)(B)(7)(b)(3), an inmate may be removed from his current classification level to a lower level "by the CP Classification Team or CP Classification Committee with due process safeguard observations."
34. According to "Standard Operating Procedure" 21-1.5(III)(B)(6), decisions on classification are based on a list of factors related to an inmate's conduct and behavioral history.
35. According to "Standard Operating Procedure" 21-1.5(III)(B)(7)(b), behavioral evidence that can lead to a decision to lower an inmate's custody level includes "disruptive behavior," three or more conduct violations within a 120 day period, or a demonstration of "a magnitude of behavior or circumstances which warrants the CP Classification Committee recommendation for regressive placement."
36. According to "Standard Operating Procedure" 21-1.5(III)(B)(5)(b), in an emergency situation, "the chairperson may convene the Capital Punishment Classification Committee at the earliest possible time to evaluate the situation and provide the Superintendent with recommendations."
37. When plaintiff was reduced to medium custody, he could go to the law library only one hour per week. As a result, he could no longer function as a law clerk. Under minimum custody, he had been able to go to the law library every morning for two hours.
38. Plaintiff had his criminal appeal and two civil cases pending when he was reduced to medium custody.
39. While plaintiff was in medium custody, he could not take his meals with the general population, he lost his basketball privileges, and he could no longer go to the hobby-craft room.
40. Plaintiff was returned to minimum custody on July 22, 1990.
41. According to 21-1.5(III)(A)(2)(a) of PCC's manual of "Standard Operating Procedures," a psychologist can be a member of the Classification Committee.
42. According to 21-1.5(III)(A)(15)(4) of PCC's manual of "Standard Operating Procedures," a psychologist "shall not be a voting member of the Capital Punishment Classification Committee."
43. Plaintiff testified that when he was brought before the Classification Committee on January 17, 1990, defendant Weber was present. The committee voted to keep plaintiff in closed custody. Plaintiff heard Weber say, "I concur."
44. Plaintiff also testified that on March 5, 1990, he was brought before the Classification Committee. Plaintiff was present when the committee voted to keep plaintiff in medium custody. He heard defendant Weber verbally concur.
45. Defendant Delo testified that he was authorized by Mo.Rev.Stat. §§ 217.335 and 217.340 to unilaterally reduce an inmate's custody level.
46. Under § 217.335(2) as amended in 1989, the classification team has the responsibility to "[m]ake recommendations to the chief administrative officer concerning custodial care, work assignments, educational *1580 or vocational training and other treatment procedures for the offender."
47. Under § 217.340, the "chief administrative officer of the institution shall classify the inmate by his job, labor, cell or sleeping quarters and level of security required, adhering as closely as possible to the recommendations of the classification team." This section was repealed in 1989 by H.B. No. 408, § A. It was not replaced by a comparable section.
48. In response to a question from the Court, defendant Delo testified that he had not been told by his in-house counsel that he had to have a recommendation from the Classification Committee before he could change an inmate's custody level.

CONCLUSIONS OF LAW
1. This Court has jurisdiction over this matter and venue is proper. 28 U.S.C. §§ 1343(a)(4) and 1391(b); 42 U.S.C. § 1983.
2. The plaintiff in a § 1983 action has the burden of proving that the defendants "deprived him of a constitutional right while acting `under color of' state law." Roudybush v. Zabel, 813 F.2d 173, 176 (8th Cir.1987) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 150, 90 S.Ct. 1598, 1604, 26 L.Ed.2d 142 (1970).
3. In order to prove his claim that defendants violated his constitutional right to due process by violating state law and their own regulations, plaintiff must first prove that such a violation took place. Siegert v. Gilley, ___ U.S. ___, ___, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991).
4. As to defendant Weber, the credible evidence is that she attended the hearings of the Classification Committee in question as required by PCC regulations, but that she did not violate the prohibition against her voting at such hearings. There is no prohibition against her voicing her opinion on the actions taken by the committee. Presumably it is her function to give the members of the committee the benefit of any insight she might possess regarding the inmate under review. Any verbal assention defendant Weber may have made did not constitute a vote. Thus, plaintiff is not entitled to judgment in his favor against defendant Weber.
5. As to defendant Delo, the uncontroverted evidence indicates that he violated the applicable Missouri statute and departmental regulations, as well as PCC's "Standard Operating Procedures" when he unilaterally reduced plaintiff to medium custody without first referring the matter to the Classification Committee to get its recommendation.
6. At trial, defendant Delo could not point to any law or regulation that gives him authority to act alone without advice from the Classification Committee when reducing an inmate's custody level. Of the Missouri statutes he cited, neither authorized him to act without a recommendation from the Classification Committee. See, Mo.Rev.Stat. § 217.335(2) (1989) (the classification team has the responsibility to "[m]ake recommendations to the chief administrative officer concerning custodial care"); Mo.Rev.Stat. § 217.340 (repealed 1989) (the "chief administrative officer of the institution shall classify the inmate by ... level of security required, adhering as closely as possible to the recommendations of the classification team").
7. Having found that defendant Delo did in fact violate state law and regulations when he reduced plaintiff to medium custody without getting a recommendation from the Classification Committee, the Court must determine whether plaintiff had a liberty interest protected by the Fourteenth Amendment in having Delo follow the laws and regulations in question. Kentucky Department of Corrections v. Thompson, 490 U.S. 454, 459, 109 S.Ct. 1904, 1908, 104 L.Ed.2d 506 (1989).
8. "Liberty interests protected by the Fourteenth Amendment may arise from two sources  the Due Process Clause itself and the laws of the States." Hewitt v. Helms, 459 U.S. 460, 466, 103 S.Ct. 864, 868, 74 L.Ed.2d 675 (1983). Where a state goes "beyond simple procedural guidelines" by using "language of an unmistakably mandatory character, requiring that certain procedures `shall,' `will,' or `must' be employed," it creates a protected liberty *1581 interest. Id. at 471-72, 103 S.Ct. at 871. Thus, a state may create a protected liberty interest by establishing "`substantive predicates' to govern official decision-making, ... and further, by mandating the outcome to be reached upon a finding that the relevant criteria have been met." Kentucky Department of Corrections v. Thompson, 490 U.S. at 462, 109 S.Ct. at 1909 (citing Hewitt v. Helms, 459 U.S. at 472, 103 S.Ct. at 871).
9. The Eighth Circuit uses a two part test to determine "whether a protected liberty interest is created: 1) does a statue, regulation, or official policy pronouncement contain particularized substantive standards or criteria that significantly guide the decisionmakers; and 2) does the statue, regulation, or official policy pronouncement use mandatory language requiring the decisionmakers to act in a certain way." Nash v. Black, 781 F.2d 665, 668 (8th Cir.1986).
10. The first part of this test is met here because PCC's "Standard Operating Manual" lists 14 factors to be considered in determining an inmate's custody level. See "Standard Operating Procedure" 21-1.5(III(B)(6). In addition, behavior that evidences a need to reduce an inmate's custody level is also listed. See "Standard Operating Procedure" 21-1.5(III(B)(7)(b).
11. The second part of the test is more difficult to analyze because the criteria listed were intended to guide the Classification Committee in making its decision. It is not required to reduce an inmate's custody level if some or all of the listed factors are presented. Thus, one could say that the lack of mandatory language precludes a finding that plaintiff had a protected liberty interest.
12. The issue, however, is not whether the Classification Committee is required to take a certain action. Instead, the issue is whether defendant Delo was required to wait for the Classification Committee to apply the criteria and make a recommendation before he reduced plaintiff to medium custody. The Court finds that he was required to wait for a recommendation before acting.
13. The Court finds support for this finding in the absence of any statute or regulation authorizing defendant Delo to act unilaterally. Indeed, the Court notes that Delo cannot act alone even in an emergency situation. According to "Standard Operating Procedure" 21-1.5(III)(B)(5)(b), in an emergency situation, "the chairperson may convene the Capital Punishment Classification Committee at the earliest possible time to evaluate the situation and provide the Superintendent with recommendations." Thus, Missouri has created a protected liberty interest by placing "substantive limitations on [Delo's] exercise of official discretion." Clark v. Brewer, 776 F.2d 226, 230 (8th Cir.1985) (citing Olim v. Wakinekona, 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983)).
14. Having found that plaintiff had a protected liberty interest in having defendant Delo wait for a recommendation from the Classification Committee before reducing his custody level, the Court must determine "what process is necessary to protect that interest." Clark v. Brewer, at 232.
15. This second step is necessary because "[d]ue process is not an end in itself." Nash v. Black, 781 F.2d 665, 668 (8th Cir.1986). Therefore,
"Hewitt does not hold that if a state employs explicit and mandatory language in connection with requiring specific substantive predicates, the entire state statute will be elevated to the level of federal constitutional law, the violation of which would constitute a violation of clearly established federal law. Instead, Hewitt stated only that the mandatory language raises a protected liberty interest. Because such an interest is raised, the court's inquiry is not whether the statute and therefore the Constitution is violated but whether the process afforded plaintiff `satisfied the minimum requirements of the Due Process Clause.'"
Brown v. Frey, 889 F.2d 159, 166 (8th Cir.1989) (quoting Hewitt v. Helms, 459 U.S. 460, 472, 103 S.Ct. 864, 871, 74 L.Ed.2d 675 (1983)).
*1582 16. The Court is mindful that the "requirements imposed by the due process clause are flexible in nature and vary with the circumstances being examined." Clark v. Brewer, 776 F.2d 226, 232 (8th Cir.1985). In determining what the due process clause required before plaintiff could be reduced to minimum custody, it is proper to consider two factors. First, the Court should consider whether defendant Delo's decision would have been "materially assisted" by adhering to the procedural requirements. Hewitt v. Helms, 459 U.S. at 473-74, 103 S.Ct. at 872. Second, the Court must balance the inmate's interests in the official's decision against the state's interests pursuant to Mathews v. Eldridge, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976). Hewitt, 459 U.S. at 473, 103 S.Ct. at 872. See also Clark v. Brewer, 776 F.2d 226, 232 (8th Cir.1985) (court balanced inmate's interests against that of the prison).
17. As to the value of the procedural requirement of referring inmates to the Classification Committee for a recommendation regarding custody level before reducing their custody level, the Court finds that this requirement is a valuable procedure promulgated by the Missouri legislature in § 217.335(2), in order to protect inmates from arbitrary and uninformed reductions in their custody level. Even the "Standard Operating Procedures" written by defendant Delo himself acknowledges the need for "due process safeguard observations." "Standard Operating Procedures" 21-1.5(III)(B)(7)(b)(3).
18. In balancing plaintiff's interest against that of the state pursuant to Mathews v. Eldridge, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976), the Court starts by identifying each side's interest. The Court finds that plaintiff had an interest in remaining in minimum custody. Plaintiff testified that he lost privileges important to him when he was reduced to medium custody. Yet, where an inmate is moved "from one extremely restricted environment to an even more confined situation" his interest is "not one of great consequence." Hewitt v. Helms, 459 U.S. 460, 473, 103 S.Ct. 864, 872, 74 L.Ed.2d 675 (1983).
19. In contrast, the Court finds that the state has a great interest in the safety of its inmates and the people it employs to run its prisons. Hewitt, 459 U.S. at 473, 103 S.Ct. at 872. In a two day period, plaintiff participated twice in organized disobedience. As a consequence, defendant Delo felt it was appropriate to reduce plaintiff to a more restrictive custody level. Defendant Delo's need to place a disruptive inmate in a more restrictive environment where he would have less opportunity to disrupt the prison is more significant than plaintiff's interest in remaining in minimum custody. Id. at 474, 103 S.Ct. at 872.
20. Consequently, plaintiff's interest could be protected if "the decisionmaker reviews charges and the then-available evidence against the prisoner" after plaintiff was given some notice of the charges and an opportunity to make an oral or written statement presenting his views to the decisionmaker. Id. at 476, 103 S.Ct. at 873. See also Clark v. Brewer, 776 F.2d 226, 233 (8th Cir.1985) (inmate's interest in being confined in the least restrictive manner could be protected by a "relatively informal, nonadversarial procedure").
21. The due process clause was not violated by the procedures employed in reducing plaintiff to medium custody. Plaintiff was given notice of the two charges against him on the day he was charged. He was present when the Adjustment Board heard the charges. Plaintiff had the opportunity to speak and present witnesses. Instead, he refused to remain at the hearing. The findings and recommendations of the Adjustment Board were reviewed by the assistant superintendent who in turn made recommendations to defendant Delo. Thus, plaintiff had notice and an opportunity to be heard while Delo had the opportunity to make an informed decision based on the findings and recommendations of the Adjustment Board and his assistant.
22. Finally, defendants have proposed that the Court make a finding that they are entitled to qualified immunity on the grounds that plaintiff had no clearly *1583 established constitutional right to have defendant Delo reduce his custody level only upon receipt of a recommendation of the Classification Committee. The Court finds that such a legal conclusion is warranted.
23. A court deciding whether a defendant is entitled to qualified immunity should begin with a "determination of whether the plaintiff has asserted a violation of a constitutional right at all." Siegert v. Gilley, ___ U.S. ___, ___, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991). Defendant Delo is entitled to qualified immunity because plaintiff's constitutional right to due process was not violated by Delo's failure to refer plaintiff to the Classification Committee before reducing his custody level.
24. Accordingly, the Court concludes that plaintiff is not entitled to judgment against defendant Delo.

CONCLUSION
For the foregoing reasons, the undersigned finds in favor of both defendants and against plaintiff. Accordingly, judgment shall be entered in favor of defendants.