**Milton V. GRIFFIN–EL, Appellant,**

v.

**Paul K. DELO; Betty Weber, Appellees.**

**No. 92–3166.**

United States Court of Appeals,
Eighth Circuit.

Submitted April 13, 1994.

Decided Aug. 26, 1994.

603

Nicholas B. Carter, St. Louis, MO, argued, for appellant.

Bruce Farmer, Jefferson City, MO, argued (Jeremiah Nixon and Gary Gardner, on brief), for appellees.

Before McMILLIAN, WOLLMAN and MAGILL, Circuit Judges.

McMILLIAN, Circuit Judge.

Milton V. Griffin–El appeals from a final judgment entered in the United States District Court[1] for the Eastern District of Missouri dismissing his 42 U.S.C. § 1983 (1988) action against defendants Paul K. Delo and Betty Weber. *Griffin–El v. Delo*, 803 F.Supp. 1576 (E.D.Mo.1992). For reversal, Griffin–El argues the district court erred in holding that (1) his custody status was not reduced without due process and (2) defendants were entitled to qualified immunity. For the reasons discussed below, we affirm the judgment of the district court.

## I. BACKGROUND

Griffin–El is a prisoner confined at the Potosi Correctional Center (PCC) in Mineral Point, Missouri. At the time of the incidents in question, Griffin–El was confined in the Capital Punishment Unit (CPU). Griffin–El filed an action under 42 U.S.C. § 1983 against Paul K. Delo, superintendent of PCC,

alleging that his procedural due process rights were violated on November 22, 1989, when Delo reduced his custody status from minimum to medium without waiting for a recommendation from the Classification Committee.[2]

Griffin–El's reduction in custody status came in response to two conduct violations. On November 14, 1989, Griffin–El was one of eighteen inmates who refused to lock down until permitted to speak with specific prison officials. As a result, Griffin–El received a conduct violation for Rule 9, organized disobedience. On November 15, 1989, Griffin–El was one of forty-three inmates who refused to return their empty food trays and was again charged with one Rule 9 violation and one Rule 20 violation (disobeying an order).

Griffin–El was interviewed by a reporting officer and appeared before the Classification Team after the issuance of each violation. Pursuant to PCC institutional policies, the Classification Team referred both violations to the Adjustment Board. Griffin–El refused to remain for the duration of the Adjustment Board hearing, contending that he needed an attorney to defend himself. In his absence, the Adjustment Board heard testimony from correctional officers and found Griffin–El guilty of both violations. The Adjustment Board recommended that Griffin–El serve ten days in detention for each violation and referred the matter to the Classification Committee for possible reduction of his custody status. These sanctions were to become effective November 21, 1989, unless altered by the superintendent.

On November 22, 1989, assistant superintendent Michael Bowersox reviewed the Adjustment Board's recommendations and modified them by writing "Assigned Medium Custody/CPU" on the November 14 violation form and recommending that the detention for the November 14 violation run concur-

1. The Honorable William S. Bahn, Senior United States Magistrate Judge for the Eastern District of Missouri. The case was tried to a magistrate judge by consent of the parties pursuant to 28 U.S.C. § 636(c)(1).

2. Griffin-El also claimed that defendant Betty Weber, a staff psychologist at PCC, had violated his constitutional rights by acting as a voting member at his custody status hearings in viola-

tion of an institutional policy precluding psychologists from being voting members of capital punishment classification committees. The district court entered judgment in favor of Weber, finding that the psychologist did not "vote" at the hearings. Griffin-El does not challenge on appeal the district court's findings with respect to Weber.

rently with the detention for the November 15 violation. Later that same day, superintendent Delo reviewed the Adjustment Board's recommendations as modified by the assistant superintendent. On the November 14 violation form, Delo reduced Griffin–El's Rule 9 violation to a Rule 20 violation and issued Griffin–El a written warning. On the November 15 violation form, Delo wrote "Overruled. Reduce to medium custody/CPU."

The modified recommendations were not returned to the Classification Team. Under Mo.Rev.Stat. § 217.335(2), the Classification Team has the responsibility to "[m]ake recommendations to the chief administrative officer concerning custodial care, work assignment, educational or vocational training and other treatment procedures for the offender." According to PCC's Standard Operating Procedure (SOP) 21–1.5(II)(E), the Classification Committee "[c]onducts reviews of all aspects of classification for inmates assigned to CPU." SOP 21–1.5(III)(B)(7)(b)(3) provides that an inmate's current custody status may only be reduced by the "Classification Team or Classification Committee with due process safeguard observations." Griffin–El did not have a hearing before the Classification Committee prior to the reduction of his custody status. Griffin–El received custody status review hearings before the Classification Committee on January 17, February 14, and March 5, 1990. The classification decision after the January hearing was to keep Griffin–El in close custody (Griffin–El's custody status had been further reduced from medium to close custody in December 1989 as a result of another Rule 20 violation). The classification decision after the February hearing was to keep Griffin–El in close custody. After the March classification hearing, Griffin–El was assigned to medium custody status. In July 1990 Griffin–El was finally returned to minimum custody status.

In June 1990 Griffin–El filed an action under 42 U.S.C. § 1983 against Delo alleging that his procedural due process rights were violated when Delo reduced his custody status from minimum to medium without waiting for a recommendation from the Classification Committee in violation of PCC's institutional policies and Missouri law. Following a bench trial, the district court entered judgment in favor of Delo finding that, although Missouri law and PCC regulations provided Griffin–El with a protected liberty interest in having Delo wait for a recommendation from the Classification Committee before unilaterally reducing his custody status from minimum to medium, he was nevertheless afforded the process necessary to protect that interest.[3] This appeal followed.

## II. DISCUSSION

Although our inquiry normally would begin with a determination of whether or not the district court correctly concluded that Griffin–El had a protectible liberty interest in his particular custody status, we need not make such a determination here because it is clear that, in any event, Griffin–El was afforded due process. *See Brown v. Frey,* 889 F.2d 159, 166 (8th Cir.1989), (quoting *Hewitt v. Helms,* 459 U.S. 460, 472, 103 S.Ct. 864, 871, 74 L.Ed.2d 675 (1983) (*Hewitt* )) (even if a state regulation "raises a protected liberty interest [,] . . . the court's inquiry is not whether the [regulation] and therefore the Constitution is violated but whether the process afforded [the inmate] satisfied the minimum requirements of the Due Process Clause.") *cert. denied,* 493 U.S. 1088, 110 S.Ct. 1156, 107 L.Ed.2d 1059 (1990).

Griffin–El was given notice of the two conduct violation charges on the day he was

---

**3.** Although the district court held that "plaintiff had a protected liberty interest in having defendant Delo wait for a recommendation from the Classification Committee before reducing his custody level," *Griffin–El v. Delo,* 803 F.Supp. 1576, 1581 (E.D.Mo.1992), we read the district court opinion as holding that Griffin–El had a constitutionally protectible liberty interest in his custody level itself. Griffin–El could not have a liberty interest in a particular procedure. Rather, for Griffin–El to prevail on his § 1983 claim

that Delo's actions regarding his custody status violated his procedural due process rights, he must prove that (1) he had a protected liberty interest *in his current custody status* (2) that was adversely affected by Delo's actions (3) without the procedural due process guaranteed by the Fourteenth Amendment. *See Slezak v. Evatt,* 21 F.3d 590, 593–94 (4th Cir.1994) (citing *Wolff v. McDonnell,* 418 U.S. 539, 555–57, 94 S.Ct. 2963, 2974–75, 41 L.Ed.2d 935 (1974)).

charged. He was interviewed by a reporting officer after the issuance of each violation, and was informed on both occasions that he would be appearing before the Classification Team for a hearing on his conduct violations. Griffin–El appeared before the Classification Team on two occasions, and the Classification Team referred the matters to the Adjustment Board. Griffin–El was present when the Adjustment Board met to hear and discuss the charges. Griffin–El had the opportunity to speak and present witnesses, an opportunity which he elected to abandon. He chose to absent himself from the Adjustment Board's hearings. The Adjustment Board heard evidence from correctional officers that Griffin–El had been engaged in organized disobedience on November 14 and again on November 15. The Adjustment Board filled out Disciplinary Action Reports for each violation, and their findings that Griffin–El was guilty of two conduct violations were presented and reviewed by assistant superintendent Bowersox, who in turn made informed recommendations to defendant Delo.

Griffin–El received adequate process under the circumstances, even if, assuming arguendo, he had a liberty interest in retaining his minimum custody status. *See Mathews v. Eldridge,* 424 U.S. 319, 332–35, 96 S.Ct. 893, 901–03, 47 L.Ed.2d 18 (1976) (extent of due process required depends upon particular interests affected). Although the notice and opportunity to discuss the reduction in custody status with the Classification Committee came after the reduction was imposed, rather than prior to it, the reduction was the product of informed decisionmaking and was a necessary safety measure, given that, in a two-day period, Griffin–El had twice participated in organized disobedience. In balancing Griffin–El's interests against those of the prison, Griffin–El received adequate process prior to his reduction from minimum to medium custody status. *See Hewitt,* 459 U.S. at 473, 103 S.Ct. at 872 (where an inmate is transferred "from one extremely restricted environment to an even more confined situa-

tion" his interest is "not one of great consequence."). A hearing before the Classification Committee prior to the reduction in custody status would have been superfluous for purposes of federal constitutional due process protection.[4]

Finally, Griffin–El challenges the district court's finding that defendant Delo was entitled to qualified immunity. Because Griffin–El did not state a claim for the violation of any rights secured by the Constitution, defendant Delo was entitled to qualified immunity. *See Siegert v. Gilley,* 500 U.S. 226, 232, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991) (in deciding whether a defendant is entitled to qualified immunity, a court must first determine whether or not "the plaintiff has asserted a violation of a constitutional right at all.")

Accordingly, we affirm the judgment of the district court.

---

**4.** Delo's failure to wait for a recommendation from the Classification Committee before reducing Griffin–El's custody status may constitute a violation of state regulations. In such a case, Griffin–El should petition in state court for a writ of mandamus. *See Pennhurst State Sch. & Hosp.*

*v. Halderman,* 465 U.S. 89, 105–06, 104 S.Ct. 900, 910–11, 79 L.Ed.2d 67 (1984) (federal courts have no authority to issue writs of mandamus to direct state officials to conform their conduct to state law).