_____

No. 95-2919
_____

James Donald Callender,                    *
                                           *
              Appellee,                     *         Appeal from the United
                                           *         States District Court
    v.                                      *         for the Northern
                                           *         District of Iowa.
Sioux City Residential Treatment           *
Facility, Steve Sholl, and Kenna Norby,    *
                                           *
              Appellants.                   *

_____

Submitted: April 11, 1996

Filed: July 10, 1996
_____

Before BEAM, Circuit Judge, MURPHY, Circuit Judge, and NANGLE, Senior
District Judge.[*]
_____

NANGLE, Senior District Judge.

The appellants-defendants appeal from the district court's grant of
summary judgment in favor of appellee James Callender on his procedural due
process claim, as well as the award of attorneys' fees to appellee.  The
appellants challenge the district court's findings that the individual
defendants are liable to Mr. Callender, that Mr. Callender had a protected
liberty interest in remaining in the work release program, that Mr.
Callender was not given the procedural due process to which he was
entitled, that the case was not moot, that the defendants were not entitled
to  qualified immunity on the procedural due process claims, that Mr.

_____

   [*]  The HONORABLE JOHN F. NANGLE, Senior United States District
Judge for the Eastern District of Missouri, sitting by designation.

Callender was entitled to an award of emotional distress damages and that Mr. Callender was entitled to an award of attorneys' fees. Because we find that the revocation of Mr. Callender's work release program does not implicate a liberty interest protected by the Fourteenth Amendment, we reverse the judgment of the district court without addressing the other arguments raised on appeal.

I.

James Callender was convicted by a jury of assault with intent to commit sexual abuse causing bodily injury in September, 1987. Callender proclaimed his innocence throughout the trial and appealed his conviction. He was sentenced to 5 years in prison and was committed to the Iowa Department of Corrections on November 2, 1987. On July 1, 1988, Callender was approved for work release by the Iowa Board of Parole. On July 18, 1988, he signed a temporary work release agreement wherein he agreed to abide by the conditions of the program and he was transferred from the Iowa Men's Reformatory to the Sioux City Residential Treatment Facility that same day.

Shortly after arriving at the facility, Callender was interviewed by appellants Steve Scholl, the residential manager, and Kenna Norby, a residential counselor. During the interview process, appellants explained to Callender that a condition of the sex offender program, which was part of his work release program, was that he admit his guilt and accept responsibility for his actions. Callender refused to admit his crime and he was transferred out of the facility on July 20, 1988. He was first transferred to the Woodbury County Jail and, after being housed at several different institutions for approximately two or three months, was ultimately transferred back to the Iowa Men's Reformatory. On July 26, 1988, Callender was given a notice

stating that the Department of Corrections had determined that he

had not met work release expectations and that the Board of Parole would review the case and issue a written decision. On September 21, 1988, the Parole Board ordered that Callender's work release be revoked and that he be committed to the custody of the Iowa Department of Corrections. On February 8, 1989, the Community Placement Manager conducted an administrative review of Callender's case and concluded that he would still recommend that Callender's work release status be revoked. Callender's conviction was affirmed on May 23, 1989, he was paroled on July 19, 1989, and his sentence discharged on October 19, 1989.

On February 23, 1989, Callender's complaint against defendants Sioux City Residential Treatment Facility, Steve Scholl and Kenna Norby was filed alleging violations of his constitutional rights. The Court dismissed the treatment facility as a defendant in its initial review of the case. Callender filed a motion for summary judgment and appellants filed a cross-motion for summary judgment. On April 19, 1993, the district court granted Callender's motion for summary judgment, and denied the appellants' motion, holding that Callender's procedural due process rights had been violated because he was deprived of the liberty interest of remaining in the work release program without a preliminary hearing. The Court further held that, although requiring plaintiff to admit his guilt violated his Fifth Amendment right against self-incrimination, the appellants were entitled to qualified immunity on that claim. On June 26, 1995, the Court awarded Callender $2,240.00 in damages for mental and emotional distress, $1.00 in nominal damages and refused to award damages for lost wages and punitive damages. On July 24, 1995, the Court awarded Callender $11,555.25 in attorneys' fees and $245.70 in expenses.

## II.

We review a district court's grant of summary judgment de novo, viewing the record in the light most favorable to the non-moving party. Marshall v. Unum Life Insurance Co., 13 F.3d 282, 283 (8th Cir. 1994). The district court held that, while Callender had no liberty interest in obtaining work release status, he had a liberty interest in remaining in the work release program. We disagree.

Protected liberty interests under the Fourteenth Amendment may arise from the Due Process Clause itself or from State laws. Edwards v. Lockhart, 908 F.2d 299, 301 (8th Cir. 1990). A liberty interest inherent in the Due Process Clause arises when a person has substantial, albeit conditional, freedom such as when he is on probation or parole. Edwards, 908 F.2d at 301. In Edwards, this Court held that a participant in an Arkansas work release program had a protected liberty interest that arose from the Due Process Clause itself because the participant no longer lived in an institution but lived in the community. Id. at 302. As the Tenth Circuit noted: "Edwards . . . correctly identifies the dispositive characteristic that marks the point at which the Due Process Clause itself implies a liberty interest: it is the fact of release from incarceration." Harper v. Young, 64 F.3d 563, 566 (10th Cir. 1995), cert. granted, 64 USLW 3787, 64 USLW 3793 (U.S. May 28, 1996) (No. 95-1598).

Unlike the work release program at issue in Edwards, Mr. Callender's work release program, at least at the time of his termination, was more analogous to institutional life than it was to probation or parole. At the Sioux City Residential Treatment Facility, releasees can eventually earn furlough privileges.

-6-

Transcript of October 5, 1994, hearing at 70. However, those privileges have to be earned and Mr. Callender was not qualified

for those privileges at the time of his transfer out of the program.  Id.  Therefore, this Court finds that the Mr. Callender's work release program did not provide the sort of substantial freedom that gives rise to a liberty interest inherent in the Due Process Clause.

We further hold that the laws of Iowa do not create a liberty interest in remaining in the work release program.  In support of its conclusion that appellee had such a state-created liberty interest, the district court relied upon this Court's decision in Hake v. Gunter, 824 F.2d 610 (8th Cir. 1987).  In that case, the court noted the two-part test then used to determine whether the state had created a constitutionally protected liberty interest: (1) whether the statutes contained particularized substantive standards that significantly guided decisions and (2) whether the statutes used mandatory language.  Id. at 614.  The district court found that the terms of Iowa Code § 906.4[1] were mandatory and that a liberty interest in remaining in work release was created by the state.

Approximately two years after the district court's order on the cross motions for summary judgment in this case, the Supreme Court issued its opinion in Sandin v. Conner, ___ U.S. ___, 115

---

[1] The relevant portion of Iowa Code § 906.4 reads as follows:

> A parole or work release shall be ordered only for the best interest of society and the offender, not as an award of clemency.  The board shall release on parole or work release any person whom it has the power to so release, when in its opinion there is reasonable probability that the person can be released without detriment to the community or to the person. . . .

S.Ct. 2293 (1995).[2]  In this seminal decision, the Court held that its prior emphasis on the mandatory language of statutes, rather than the essence of the deprivation, "encouraged prisoners to comb regulations in search of mandatory language on which to base entitlements to various state-conferred privileges."  Id. at 2299. The Court held that the proper focus should be on whether the deprivation "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life".  Id. at 2300.  The Court reached this conclusion because the earlier approach discouraged state officials from codifying their administrative procedures and has inappropriately involved federal courts in the day-to-day management of prisons.  Id. at 2299-2300. In Sandin, the Court found that 30 days of solitary confinement, when compared with the inmate's overall prison environment, was not the "type of atypical, significant deprivation in which a state might conceivably create a liberty interest."  Id. at 2301.

In Dominique v. Weld, 73 F.3d 1156 (1st Cir. 1996), the First Circuit had occasion to address the question of whether revocation of work release implicated a state-created liberty interest under the standard of Sandin.  The inmate in Dominique had been on work release for almost four years during which time he was allowed to become a mechanic for an employer and also allowed to open his own vehicle repair shop.  Id. at 1157.  When his participation in the program was revoked, he was transferred to a medium security institution without ever receiving a written statement concerning his removal.  Id.  The inmate alleged that his revocation violated the Due Process Clause of the Fourteenth Amendment and the Ex Post

---

[2] Sandin applies retroactively to this case.  See Dominique v. Weld, 73 F.3d 1156, 1160 n.6 (1st Cir. 1996)(citing Rivers v. Roadway Express, Inc., ___ U.S. ___, 114 S.Ct. 1510, 1519 (1994) and Harper v. Virginia Department of Taxation, 509 U.S. 86, 113 S.Ct. 2510, 2517 (1993)).

Facto Clause.  Id.  On appeal, the First Circuit applied Sandin v. Conner and concluded that, because the conditions at the medium

security facility were similar to those ordinarily experienced by a large number of inmates on a daily basis, placement in such a facility was not an atypical hardship. Id. at 1160. The Court noted that the change between the "quasi-freedom" of work release and a medium security facility may have been a significant deprivation but, nonetheless, it was not an atypical deprivation. Id. The Court also found that the state's action did not affect the duration of the inmate's sentence in any way. Id.

In this case, revocation of Callender's work release program was not an atypical or signficant deprivation. Within two or three months, Mr. Callender was returned to the same institution that he had left upon being granted work release. Clearly, many inmates endured the same conditions of confinement that Mr. Callender did when he was transferred back to the Iowa Men's Reformatory. Moreover, unlike the inmate in Dominique, Mr. Callender never actually participated in the work release program at all; therefore, the deprivation in this case was not a significant one. Plaintiff makes much of the fact that upon his return to the Iowa Men's Reformatory he lost all the privileges he had earned and had to start over within the institutional system. Although the Court is not unsympathetic to his plight, the appellee's deprivation is not atypical of what inmates have to endure in daily prison life. Moreover, there is no indication in the record that the duration of Mr. Callender's sentence was in any way affected by the revocation of his work release status. Accordingly, the Court finds no state-created liberty interest in remaining in Iowa's work release program.

## III.

In sum, this Court finds that Mr. Callender did not have a

-11-

constitutionally protected liberty interest in remaining in the work release program. Mr. Callender's work release program was not

one that gave rise to a liberty interest inherent in the Due Process Clause itself.  Moreover, revocation of his work release status did not impose an atypical and significant hardship upon him in relation to the ordinary incidents of prison life.  Accordingly, the judgment is reversed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.