_____

No. 96-1039
_____

Jeremy Kennedy,                          *
                                         *
          Appellee,                      *
                                         *
    v.                                   *   Appeal from the United States
                                         *   District Court for the
John T. Blankenship, Major               *   Eastern District of Arkansas.
Disciplinary Hearing Officer;            *
Willis H. Sargent, Warden;               *
Larry Fiedorowicz, Disciplinary          *
Hearing Officer Administrator,           *
                                         *
          Appellants.                    *


                        _____

              Submitted:  September 9, 1996

                 Filed:  November 18, 1996
                        _____

Before BOWMAN, BRIGHT, and LOKEN, Circuit Judges.
                        _____

BOWMAN, Circuit Judge.


    Defendants John Blankenship, Willis Sargent, and Larry Fiedorowicz, employees of the Arkansas Department of Correction, appeal from the judgment of the District Court in favor of plaintiff Jeremy Kennedy in this 42 U.S.C. § 1983 civil rights action.  Because we conclude that Kennedy's due process rights were not violated, we reverse.


    On February 21, 1993, Kennedy, an inmate of the Cummins Unit of the Arkansas Department of Correction, hurt his ankle while engaged in horseplay in his cell.  Early on the morning of February 22, Kennedy had his ankle examined by medical personnel, who did not provide him with a medical excuse from work duty.  When

Kennedy did not report for work later that morning, a guard cited him ("issued a major disciplinary against him," in prison parlance) for refusing to report to work and for failing to obey a direct order.

On February 24, defendant Blankenship chaired a disciplinary hearing to consider the charges against Kennedy. In response to a question from Blankenship, Kennedy stated that he had not been to sick call on the morning he refused to report to work. Blankenship found Kennedy guilty of violating prison rules and sentenced him to thirty days in "punitive isolation," a stricter form of custody than the "administrative segregation" status Kennedy had at the time. Kennedy appealed to defendant Sargent, the warden of the prison, and to defendant Fiedorowicz, the disciplinary hearing administrator of the Department, and each affirmed Blankenship's decision.

Kennedy filed this 42 U.S.C. § 1983 action in district court on April 26, 1993, claiming that defendants had violated his constitutional right to due process. In particular, Kennedy claimed that an administrative regulation of the Department required Blankenship, the hearing officer, to contact medical personnel to determine whether Kennedy was too ill to report to work.[1] A magistrate judge initially recommended judgment in favor of defendants, but the District Court rejected the recommendation.

---

[1]The regulation states that "whenever a charged inmate's defense is illness, the unit health staff must be contacted to determine whether the inmate was examined for a complaint of illness and whether, in the opinion of the person or persons who examined the inmate, the inmate was feigning illness or not sufficiently ill to justify the rule violation." Appellants' App. at 63. If a statement from the health staff is not included in the hearing officer's decision, "the disciplinary action will be deemed invalid and expunged from the inmate's records." Id. It is undisputed that Blankenship did not contact the health staff, presumably because Kennedy stated at the hearing that he had not sought medical attention on February 22.

The Magistrate Judge then recommended judgment in favor of Kennedy and an award of $50 in damages. The District Court agreed and also ordered defendants to expunge the disciplinary action from Kennedy's record. Defendants appealed to this Court, and we reversed and remanded for further consideration in light of the Supreme Court's intervening decision in Sandin v. Conner, 115 S. Ct. 2293 (1995). Kennedy v. Blankenship, No. 94-3413 (8th Cir. June 29, 1995) (unpublished per curiam). On remand, the District Court reconsidered its decision and again entered judgment in favor of Kennedy for $50 and ordered the disciplinary action expunged. The defendants appealed again. We have jurisdiction pursuant to 28 U.S.C. § 1291 (1994).

On appeal, defendants challenge only the District Court's application of the law to the facts. Our review, therefore, is de novo. See Falls v. Nesbitt, 966 F.2d 375, 377 (8th Cir. 1992).

In Sandin, the Supreme Court retreated from a line of cases in which it had examined prison regulations in detail to determine whether the regulations created constitutionally protected liberty interests by the use of "'language of an unmistakably mandatory character' such that the incursion on liberty would not occur 'absent specified substantive predicates.'" Sandin, 115 S. Ct. at 2298 (quoting Hewitt v. Helms, 459 U.S. 460, 471-72 (1983)). The Court reworked the relevant inquiry as follows:

> [W]e recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

Id. at 2300 (citations omitted).  The Court recognized that "[d]iscipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law."  Id. at 2301.

Sandin and our subsequent cases lead us to the conclusion that Kennedy's demotion from administrative segregation to punitive isolation is not the sort of deprivation that qualifies as "atypical and significant."  We note first that the Hawaii inmate in Sandin was moved from administrative segregation to "disciplinary segregation" for 30 days, much like Kennedy was in this case.  Id. at 2296 & n.2.  In both Sandin and this case, prisoners in administrative segregation and prisoners in the stricter category spend significant amounts of time in "lockdown," confined to their cells.  Id. at 2301.

The District Court distinguished Sandin because the only apparent difference between the two custody levels in Sandin was "one extra phone call and one extra visiting privilege."  Id. at 2296 n.2.  We agree that Kennedy lost more privileges as a result of his punishment than did the inmate in Sandin.[2]  Nevertheless,

---

[2]According to the Magistrate Judge's findings, the primary difference between administrative segregation and punitive isolation in Arkansas is the privilege of working and the accompanying good time credits.  Administrative segregation inmates who work are also entitled to a shower and a change of clothing on days that they work.  Despite the implication of the term "isolation," inmates in punitive isolation are housed in two- or four-man cells, while all administrative segregation inmates live in two-man cells.  (In contrast, the inmate in Sandin was apparently in solitary confinement.)  Inmates in punitive isolation also face restrictions on mail and telephone privileges (privileged mail and emergency calls only), visitation privileges (the inmate's attorney only, rather than biweekly general visitation), commissary privileges, and personal possessions (legal materials, a religious text, soap, toothbrush, toothpaste, washcloth, and toilet paper only).  Thus, although prisoners in Arkansas apparently refer to punitive isolation as "the hole," it is abundantly clear that that description is a significant exaggeration of actual conditions.

Kennedy's punishment is comparable to other deprivations we have upheld in post-Sandin cases. See Wycoff v. Nichols, 94 F.3d 1187, 1188 (8th Cir. 1996) (10 days of disciplinary detention and 100 days in maximum security cell); Callender v. Sioux City Residential Treatment Facility, 88 F.3d 666, 669 (8th Cir. 1996) (revocation of work release and return to prison); Moorman v. Thalacker, 83 F.3d 970, 971 (8th Cir. 1996) (transfer from minimum- to medium-security prison, 15 days of highest-level disciplinary detention, and 107 days of less-restrictive disciplinary detention). Considering all the circumstances, we conclude that Kennedy's transfer from administrative segregation to punitive isolation was not "a dramatic departure from the basic conditions" of his confinement and thus does not constitute "the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." Sandin, 115 S. Ct. at 2301.

Even if the deprivation in this case were atypical and significant, however, we would agree with defendants that reversal is still required. In essence, Kennedy claims a federal constitutional liberty interest in having state officers follow state law. But in making this claim, Kennedy misinterprets the nature of procedural due process. If Kennedy has a liberty interest, it is an interest in the nature of his confinement, not an interest in the procedures by which the state believes it can best determine how he should be confined. See Olim v. Wakinekona, 461 U.S. 238, 250 (1983) ("Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement."); Griffin-El v. Delo, 34 F.3d 602, 604 n.3 (8th Cir. 1994) (inmate does not have a liberty interest in a particular procedure). The Due Process Clause of the Fourteenth Amendment, not state law, governs the procedures which the state must follow in depriving Kennedy of a substantive liberty interest. See Vitek v. Jones, 445 U.S. 480, 491 (1980); Brown v. Frey, 889 F.2d 159, 166 (8th Cir. 1989) ("[T]he court's inquiry is not whether the [state] statute

and therefore the Constitution is violated but whether the process afforded plaintiff 'satisfied the minimum requirements of the Due Process Clause.'") (quoting <u>Hewitt</u>, 459 U.S. at 472), <u>cert. denied</u>, 493 U.S. 1088 (1990).

Kennedy does not argue that the Due Process Clause itself creates a liberty interest in this case, that is, that punitive isolation is beyond "the normal limits or range of custody which the conviction has authorized the State to impose." <u>Meachum v. Fano</u>, 427 U.S. 215, 225 (1976). Kennedy's only argument is that the state failed to follow its own procedural rules and thus failed to afford him the due process of law mandated by the Constitution. But, as we have stated above, the Due Process Clause does not federalize state-law procedural requirements. As a result, Kennedy's claim must fail. <u>See</u> <u>Hughes v. Lee County Dist. Court</u>, 9 F.3d 1366, 1367 (8th Cir. 1993) (assertion that state violated its own procedural guidelines does not state a federal claim); <u>Swenson v. Trickey</u>, 995 F.2d 132, 135 (8th Cir.) (inmate may not base § 1983 procedural due process claim on violation of state procedural law), <u>cert. denied</u>, 510 U.S. 999 (1993).

We note, as mentioned earlier in this opinion, that at Kennedy's disciplinary hearing Blankenship asked Kennedy whether he had been to sick call on the morning in question. Kennedy's answer, that he had not, appeared to eliminate any need for contacting the unit health staff, and there was evidence supporting the decision to impose discipline. Clearly, Kennedy received all the process he was due under <u>Wolff v. McDonnell</u>, 418 U.S. 539, 563-72 (1974) (outlining the procedural safeguards that due process requires in prison disciplinary proceedings), and indeed he makes no claim to the contrary.

Accordingly, the judgment of the District Court is reversed, and the case is remanded with instructions to enter judgment in favor of defendants.

BRIGHT, Circuit Judge, concurring separately.

I concur separately on the basis that the prisoner, Jeremy Kennedy, received due process.

I would not reach the <u>Sandin</u> issue in this case.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.