Anthony McGOUE,[1] Plaintiff,

v.

James JANECKA, et al., Defendants.

No. 01–CV–4603.

United States District Court, E.D. Pennsylvania.

July 22, 2002.

1. There appears to be some confusion concerning plaintiff's last name. The clerk's office, when originally docketing the case, interpreted plaintiff's name as Anthony McGove, and captioned the case accordingly. In subsequent typed filings submitted by plaintiff, the name appears as Anthony McGoue. Other documents submitted to the court indicate

Anthony McGoue, Philadelphia, PA, pro se.

Christopher R. Mattox, Diorio & Sereni, LLP, Media, PA, for defendants.

## EXPLANATION AND ORDER

ANITA B. BRODY, District Judge.

Plaintiff, Anthony McGoue ("McGoue" or "plaintiff"), has filed suit pursuant to 42 U.S.C. § 1983 against James Janecka ("Janecka"), warden of the George W. Hill Correctional Facility ("facility"),[2] Francis Bruno ("Bruno"), assistant warden for programs at the facility, Michael Shank ("Shank"), head counselor at the facility, and David Mullany ("Mullany"), work release counselor at the facility (collectively "defendants"). McGoue, who is proceeding *pro se*, alleges that while incarcerated, defendant's violated his right to due process by removing him from the work release program without providing him with written notice or an institutional hearing. Defendants have moved to dismiss plaintiff's claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Because I find that the complaint fails to state a claim on which relief can be granted, I will grant defendant's motion to dismiss.

### Factual Background [3]

McGoue, a prisoner at the George Washington Hill Correctional Facility, participated in a court-ordered work release program. On April 3, 2001, a laboratory testing company sent a report to the facility indicating that based on a sample collected on March 29, 2001, plaintiff had used alcohol. Defendant Mullany, plaintiff's work release counselor, confronted McGoue with the results of the examination. McGoue explained to Mullany that he worked as a barber, an occupation requiring him to handle alcohol based materials throughout his work day. After a week of institutional investigation during which plaintiff remained at the facility, Mullany informed plaintiff that he could return to his position at the barber shop on April 9, 2001. On April 11, 2001, defendant Bruno contacted Judge Patricia Jenkins at the Court of Common Pleas for

that plaintiff's name is Anthony McGrove. I have adopted the spelling that plaintiff himself has used before this court and throughout this motion, I will refer to him as McGoue. I will instruct the clerk's office to make the correction in the court records.

2. Plaintiff's complaint refers not to the George W. Hill Correctional Facility, but to the Delaware County Prison. However, as all defendants have identified their place of employment as the George W. Hill Correctional Facility, I have assumed plaintiff is referring to that facility, simply under a different name.

3. As is appropriate on defendant's motion to dismiss, I have accepted the facts as stated in McGoue's complaint.

Delaware County and advised her of plaintiff's positive urinalysis test. The letter made no reference to the institutional investigation or to the fact that the facility had permitted plaintiff to return to work on April 9. Bruno recommended that Judge Jenkins remove plaintiff from the work release program. The following day, the judge issued such an order, removing plaintiff from work release and taking away his "good time."

On April 16, 2001, McGoue filled out an information request form. On that form, plaintiff informed Mullany that though he had been taken off of the work release program, he never received a "misconduct" explaining his infractions. Having received no response, plaintiff submitted another information request on May 1, 2001, this time to defendant Shank, asking why he never received a hearing prior to his removal from work release. On May 29, 2001, defendant wrote to defendant Bruno, again asking why he was taken off of the work release program without a write-up. Five days later, plaintiff sent a slightly more specific request. Citing the inmate discipline guide and his constitutional rights, he again inquired as to why he received no hearing. Defendant Shank responded the following day and explained that McGoue did not need a discipline hearing because the judge, rather than the prison officials, revoked his work release status. On June 6, 2001, plaintiff submitted an information request to Warden Janecka. Plaintiff reminded the warden that he had previously asked him why he was taken off of work release without a write-up and that Janecka had indicated he would look into the matter. He never received a response. On September 10, 2001, McGoue filed his complaint in federal court.

*Legal Standard*

In order to survive a motion to dismiss, the plaintiff must provide enough evidence to support his or her claims; however, a plaintiff does not need to demonstrate that he or she will prevail on the merits. *See Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). The claim may be dismissed only if the plaintiff cannot demonstrate any set of facts in support of the claim that would entitle him or her to relief. *Williams v. New Castle County,* 970 F.2d 1260, 1266 (3d Cir.1992). In considering the motion to dismiss, the court must accept as true all factual allegations in the complaint and all reasonable inferences that may be drawn therefrom, construing the complaint in the light most favorable to the plaintiff. *See Weiner v. Quaker Oats Co.,* 129 F.3d 310, 315 (3d Cir.1997). Where a plaintiff is *pro se* the court adopts a less stringent reading of the allegations than it would if an attorney drafted the complaint. *See Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). The court will permit a *pro se* plaintiff "to offer supporting evidence of his allegations unless it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Evans v. Vaughn,* No. CIV.A. 97–5754, 1998 WL 135096 at *2 (E.D.Pa. March 24, 1998) (*quoting Haines,* 404 U.S. at 520–21, 92 S.Ct. 594).

*Discussion*

Under 42 U.S.C. § 1983, a plaintiff may bring suit against any person who, acting under the color of law, deprived him or her of a right secured by the Constitution or other law. *See* 42 U.S.C. § 1983 (2000). In order to prevail on a due process claim, a plaintiff must demonstrate the existence of a protected liberty interest. A protected liberty interest may arise from either of two sources, the Due Process clause itself or the laws of a state. *See Hewitt v.*

*Helms*, 459 U.S. 460, 466, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983).

The Due Process clause of the Fourteenth Amendment to the United States Constitution provides that a state may not deprive any person of life, liberty, or property without due process of law. *See* U.S. Const. amend. XIV, § 1. Though validly convicted prisoners do not forfeit all of their rights, the "criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its prison system." *Meachum v. Fano*, 427 U.S. 215, 224, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976). "As long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." *Hewitt*, 459 U.S. at 468, 103 S.Ct. 864. The Supreme Court has found that a prisoner has no liberty interest protected by the Due Process clause when transferred from one facility to another, either for administrative or disciplinary reasons, or when placed in administrative segregation. *See Hewitt*, 459 U.S. at 460, 467–68, 103 S.Ct. 864 (administrative segregation); *Meachum*, 427 U.S. at 225, 96 S.Ct. 2532 (transfers); *Montanye v. Haymes*, 427 U.S. 236, 243, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976) (transfers). The Third Circuit has determined that a prisoner had no liberty interest in remaining in a halfway house. *See Asquith v. Dep't of Corr.*, 186 F.3d 407, 411 (3d Cir.1999). Other courts have reached similar conclusions regarding the participation in a work release program and the removal from participation in that program. *See, e.g., Evans*, 1998 WL 135096 at *3 (finding no protected liberty interest when returned to general prison population after twelve years of work clearance

and nine years of living outside of walled prison facility).

State laws or regulations can also give rise to liberty interests protected by the Due Process clause. *See Asquith*, 186 F.3d at 411. However, no deprivation of that interest occurs unless the actions of the state "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). The court must measure the hardship not on the basis of the prisoner's life both before and after the specific deprivation, but instead in relation to what any inmate might expect to encounter as a result of being convicted and sentenced to a term of imprisonment. *See Asquith*, 186 F.3d at 412. Against this backdrop, several courts have determined that removal from a work release program does not amount to an atypical and significant hardship. *See Callender v. Sioux City Residential Treatment Facility*, 88 F.3d 666, 669 (8th Cir.1996); *Dominique v. Weld*, 73 F.3d 1156, 1159–60 (1st Cir.1996).

McGoue claims that defendants deprived him of his due process rights by removing him from the work release program without providing him with official notice of his misconduct or a hearing. The Due Process clause does not provide plaintiff with a protected liberty interest in remaining in the work release program. Judge Jenkins imposed a sentence on McGoue ranging from one year less one day up to two years less one day, followed by three years probation. As a condition of confinement, Judge Jenkins indicated that plaintiff was to immediately be placed on work release. None of the defendants actually made the decision to remove plaintiff from the work release program. Though Bruno recommended this action in a letter to the sentencing judge, McGoue's removal from the

program was effected by a court order signed by Judge Jenkins.[4] Altering that condition did not render the remaining provisions of McGoue's sentence illegal. Plaintiff does not contend that his removal from work release violates any other constitutional provision. As the period of confinement remained consistent with the legal sentence and did not otherwise violate the Constitution, plaintiff has no liberty interest deprived from the Due Process clause. *See Hewitt,* 459 U.S. at 468, 103 S.Ct. 864.

Plaintiff also lacks a protected liberty interest derived from the laws and regulations of the Commonwealth of Pennsylvania. Revocation of his work release status did not impose anything upon plaintiff outside of the ordinary incidents of prison life. An inmate, after being convicted of a crime, may reasonably expect to encounter a situation where he must remain in prison at all times, rather than traveling to a job each day. *See Asquith,* 186 F.3d at 412. Quite simply, there was nothing atypical about McGoue's conditions of imprisonment after Judge Jenkins revoked his work release status. Though possibly a personal hardship, it does not impose "atypical and significant hardship on [McGoue] in relation to the ordinary incidents of prison life." *Sandin,* 515 U.S. at 484, 115 S.Ct. 2293. Therefore, plaintiff has no protected liberty interest derived from the laws or regulations of the state.

As neither the Due Process clause nor Pennsylvania law provided McGoue with a protected liberty interest in participating in the work release program, he cannot, as a matter of law, prevail on a claim brought pursuant to 42 U.S.C. § 1983.[5] As plaintiff had no cognizable right, the defendants did not deprive him of his due process rights. I will grant defendants' motion to dismiss.

### ORDER

**AND NOW,** this day of July 2002, it is **ORDERED** that:

(1) The clerk's office is instructed to correct caption of this case so that the plaintiff's name is Anthony McGoue;

(2) The defendants' motion to dismiss (docket entry # 15) is **GRANTED;** and

(3) The clerk's office is directed to enter judgment in favor of defendants and against plaintiff and mark this action closed.

---

**4.** Though I have framed my discussion on the motion to dismiss in terms of the question of whether plaintiff had a protected liberty interest in remaining in the work release program, the fact that the sentencing judge made the decision to terminate plaintiff's participation, rather than any of the named defendants would likely impact any subsequent analysis of plaintiff's claims as defendants simply enforced a court order in removing plaintiff from the work release program.

**5.** Plaintiff also claims that taking away his already accumulated "good time" violated his due process rights. However, he may not pursue this claim in a § 1983 action. As the Supreme Court has held, a court may not consider a § 1983 claim relating to a loss of a prisoner's good time if the court decision "would necessarily imply the invalidity of his conviction or sentence," unless the sentence has already been invalidated or overturned. *Heck v. Humphrey,* 512 U.S. 477, 487, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). Though plaintiff has asked for money damages and lost wages, his claim for good time credits appears to challenge the duration of his sentence. Therefore, a habeas corpus or equivalent state action is the appropriate method of pursuing this issue. *See Leamer v. Fauver,* 288 F.3d 532, 542 (3d Cir.2002). However, as it appears plaintiff has been released from confinement the issue may be moot.